JUDGE HARDIN
delivered the opinion of the court.
The appellee, Robert A. Hopkins, having been appointed the committee of F. M. Davis, an idiot, and claiming that the appellant, Thomas Canaday, individually and as administrator of William Canaday and of Catharine Canaday, deceased, was indebted to Davis for services rendered by him before he was found an idiot, united with Canaday in entering of record in the Bourbon Circuit Court the following statement as the foundation of this litigation in lieu of the pleadings of a civil action:
“ April 24, 1868. The parties appeared in open court and consented that the following should be entered of record: Robert A. Hopkins, as committee of F. M. Davis, claims of Thomas Canaday, in his own right and as administrator of William Canaday, and also as administrator of Catharine Canaday, the value of the services of F. M. Davis rendered to the said intestates and to the said Thomas Canaday; and for the purpose of adjusting said claims it is agreed that this case shall be heard before the judge of the Bourbon Circuit Court on the third day of the next July term thereof, upon such testimony, oral or written, as either party may offer, and judgment shall be rendered by the court according to the justice of the case, subject to appeal by either party to the Court of Appeals, as in other cases; the parties dispensing with any other or further pleadings, and this agreement to be *110 entered of record. Any claim Thomas Canaday may have against said F. M. Davis on any account whatever shall also be adjusted on the hearing.”
From the testimony taken by a commissioner, and other evidence, the following deductions of fact were authorized;
1. Davis, who was imbecile from infancy, was apprenticed to William Canaday when a child, and after arriving at adult age continued in the service of Canaday for about seven years, when Canaday died, leaving Catharine Canaday his widow, in whose service Davis remained, at the same place of residence, to which he seems to have been attached, till the death of Mrs. Canaday in 1861, she having survived her husband about three years. Afterward Thomas Canaday, the son and .administrator of William and Catharine Canaday, occupied the old homestead, and Davis remained there in his service till the appointment of Hopkins as his committee in 1868.
2. The services of Davis exceeded in value his board and clothing about one hundred dollars a year.
3. In October, 1858, William Canaday placed in Thomas Canaday’s hands seven hundred dollars in consideration of services rendered by Davis, and in trust for his use for life, the trustee stipulating to pay him annually four per cent, thereon as needed, and at the death of Davis the fund so held in trust was to be equally divided between Thomas Canaday and his three sisters, Mahala Hopkins, Ann Allen, and Malinda Parker.
4. At the death of Catharine Canaday she deposited in Thomas Canaday’s hands three hundred dollars, to be held as an addition to said seven hundred dollars, and for the same purposes and upon the same trusts.
5. The trustee had paid taxes for Davis amounting to $54.44, and an attorney’s fee of fifteen dollars for defending the inquest of idiocy.
Upon these facts the court adjudged: 1. That the plaintiff *111 recover of the defendant $994.86 for the trust fund of seven hundred dollars, and four per cent, interest thereon. 2. Also •the sum of $390.37 for said fund of three hundred dollars, and four per cent, interest thereon. 3. Also the sum of $692.85 for the services of Davis from October 8, 1861, to April 24, 1868, with interest from the latter date. The judgment, amounting to $2,078.08, was to be credited by $69.44 for taxes and attorney’s fee paid as aforesaid.
From that judgment Canaday has appealed, and Hopkins prosecutes a cross-appeal.
The first question, presented is, whether the court had jurisdiction of the case — it not appearing by affidavit that the controversy was real, and the proceedings in good faith to determine the rights of the parties, as required by section 705 of the Civil Code of Practice on the submission of a case upon an agreement of the facts. In Jones v. Hoffman, &c., 18 B. Monroe, 656, that requirement of the Code was held to be imperative in a case embraced by it, where the parties “ agree upon a case containing the facts upon which the controversy depends.” But this is not such a case. The agreement in this case only substituted a brief statement on the record for written pleadings, and did not dispense with proof of the facts upon which the judgment of the court was sought. They remained to be established in the mode prescribed by law; therefore, as the controversy must, from the necessity of proving the facts, be real and not fictitious, it could not involve the abuse of the authority of the court, which the provision of the Code referred to was intended to prevent. And although the parties adopted an irregular and, as we think, an inconvenient mode of presenting their case, we are of opinion that the court had jurisdiction to try it.
But on other grounds the judgment is deemed erroneous, and must be reversed. It is quite obvious that if the provisions made for Davis by William and Catharine Canaday, *112 by which the personal trust was devolved on the appellant, were such as should be upheld as an equitable satisfaction of their respective liabilities to Davis for his services, there could have been no recovery against the appellant as the administrator of either decedent. And it is also manifest that the judgment for the sums of $994.86 and $390.37 can not be sustained consistently with the trust so created unless the appointment of the appellee as committee of Davis ipso facto substituted him for the appellant as trustee, or sufficient grounds were disclosed in this case for removing the appellant as trustee ánd appointing the appellee in his place; and the judgment had that effect.
The circumstances under which William and Catharine Canaday seem to have felt under obligations to provide for Davis as they undertook to do were peculiar, and such as to indicate that they acted from feelings of generosity and kindness toward him as well as a proper sense of duty and right. They had given him their care and protection in his infancy and helpless imbecility, rendering him as contented in their service as his condition made him dependent upon them. He did not want to leave them, and they may have consulted his wishes rather than their interest or convenience in retaining him; and although they made their own children the ultimate beneficiaries of the funds they secured to his use, the provisions made were, we think, just and reasonable in view of the condition of Davis and the benefits he had already derived in having the home of his choice and the care of those to whom he was most attached. The trust should therefore have been sustained.
It is scarcely necessary to say that the appointment of the appellee as committee did not divest the authority of the appellant as trustee. But the committee took the estate subject to the execution of the trust and the rights of the appellant and the other remote beneficiaries of the funds.
*113 We do not perceive in the evidence any sufficient ground for tbe removal of the appellant and the substitution of another trustee, nor do we construe the judgment as having the effect of transferring from the appellant to the appellee the duties and responsibilities of a trustee.
It results that the judgment for the recovery of the trust funds is radically erroneous. No valid ground of objection appears to the recovery,against the appellant for services rendered by Davis for him after the death of Catharine Canaday, nor is any sufficient cause perceived for reversing the judgment on the cross-appeal; but it is deemed proper to suggest that the taxes and attorney’s fee paid by the appellant for Davis should be regarded as paid out of the interest on the trust funds.
Wherefore the judgment is reversed on the appeal, and the cause remanded for a judgment consistent with this opinion, and it is affirmed on the cross-appeal.